## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| NOVAN, INC., *et al.*,[1] | ) Case No. 23-10937 (LSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: D.I. 15 & 53** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS
### TO (A) OBTAIN POSTPETITION FINANCING AND
### (B) USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE
### PROTECTION TO THE PREPETITION SECURED LENDER, (III)
### SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Novan, Inc. and EPI Health, LLC (collectively, the "**Debtors**" or the "**Borrowers**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 2002-1, 4001-2, 7007-1, 9013-4, and 9014-2 of the Local Bankruptcy Rules for the District of Delaware (the "**Local Rules**"), seeking entry of this interim order (this "**Interim Order**") and the Final Order (as defined herein and, together with this Interim Order, the "**DIP Orders**") among other things:

- authorizing the Borrowers to obtain postpetition financing ("**DIP Financing**") pursuant to a senior, secured, superpriority, debtor in possession multi-draw term loan facility (the "**DIP Facility**") subject to the terms and conditions set forth in this Interim Order and that certain Superpriority Debtor in Possession Loan and Security Agreement, attached hereto in substantially final form as **Exhibit 1** (as amended, restated, amended

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number (if applicable), are: Novan, Inc. (7682) and EPI Health, LLC (9118).  The corporate headquarters and the mailing address for the Debtors is 4020 Stirrup Creek Drive, Suite 110, Durham, NC 27703.

[2]    Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the Motion or DIP Credit Agreement (as defined herein).

and restated, supplemented, or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among the Borrowers, and one or more affiliates of Ligand Pharmaceuticals, Incorporated ("**Ligand**") or its designee (the "**DIP Lender**"), consisting of (i) new money term loans in an aggregate principal amount of up to $12,000,000, of which $1,000,000 will be available upon entry of this Interim Order, subject to the Initial DIP Budget, of which up to $3,500,000 in the aggregate will be available prior to the entry of the Final Order (as defined below), and the remainder will be available upon the entry of the Final Order, and (ii) the DIP Roll-Up Loans (as defined below), which will be deemed rolled up and converted into DIP Obligations (as defined below) (the loans to be made available under the foregoing clauses (i) and (ii), the "**DIP Loans**" and the commitments therefor, the "**DIP Commitments**");

- authorizing the Borrowers (the "**DIP Loan Parties**") to incur the DIP Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums and other fees), costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) due or payable under the DIP Documents (as defined below) (collectively, the "**DIP Obligations**");

- authorizing the Borrowers to execute, deliver and perform under the DIP Credit Agreement and all other documents and instruments that may be reasonably requested by the DIP Lender in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, together with the DIP Credit Agreement, the "**DIP Documents**");

- subject to the Carve-Out (as defined below) and otherwise solely to the extent set forth herein, granting to the DIP Lender allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to the DIP Lender valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral (as defined below), on the terms described herein;

- authorizing the DIP Lender to take all commercially reasonable actions to implement the terms of this Interim Order;

- upon entry of a Final Order, waiving (a) the Debtors' right to surcharge the Prepetition Collateral (as defined below) and the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- waiving the equitable doctrine of "marshaling" and other similar doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP Lender and (b) with respect to the Prepetition Collateral (including the Cash Collateral) for the benefit of any party other than the DIP Lender; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order;

- authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral (as defined below) solely in accordance with the DIP Orders and the DIP Documents;

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Documents;

- subject to the restrictions set forth in the DIP Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral and provide adequate protection to the Prepetition Secured Lender (as defined below) for any diminution in value of its interests in the Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "**Diminution in Value**");

- solely to the extent entitled under applicable law, granting adequate protection to CSNK Working Capital Finance Corp. d/b/a Bay View Funding ("**Bay View**"), in its capacity as buyer, under that certain Factoring Agreement dated as of December 1, 2022 (as amended, restated, amended and restated, modified, supplemented, or extended from time to time, the "**Factoring Agreement**"), between EPI Health, LLC ("**EPI Health**"), as seller, and Bay View, all such adequate protection on the terms set forth in this Interim Order, with respect to the use and aggregate Diminution in Value, if any, of Bay View's interests in the Collateral (as defined under the Factoring Agreement);

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors and the DIP Lender to implement and effectuate the terms and provisions of the DIP Orders and the DIP Documents;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

- scheduling a final hearing (the "**Final Hearing**") to consider final approval of the DIP Facility and use of Cash Collateral on the terms of a proposed order (the "**Final Order**") to be posted to the docket prior to the Final Hearing.

The Court having considered the interim relief requested in the DIP Motion, the exhibits attached thereto, the *Declaration of Paula Brown Stafford in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), the available DIP Documents, and the evidence submitted and arguments made at the interim hearing held on July 19, 2023 (the "**Interim Hearing**"); and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and

their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      *Petition Date*.  On July 17, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

The predicates for the relief sought herein are sections 105, 361, 362, 363(b), 363(c), 363(e), 364(c), 364(d)(1), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and the Local Rules.

D.     *Committee Formation*.  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in these cases (a "**Committee**").

E.     *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Notice of the Motion and the Interim Hearing has been provided to (a) the U.S. Trustee; (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lender and Prepetition Secured Lender, Morgan, Lewis & Bockius LLP, 101 Park Ave., New York, NY 10036, Attn: Craig A. Wolfe, Kristen V. Campana, Jason R. Alderson, and T. Charlie Liu; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the Debtors conduct business; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002, (collectively, the "**Notice Parties**"), in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F.     *Cash Collateral*.  As used herein, the term "**Cash Collateral**" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of the DIP Lender and the Prepetition Secured Lender within the meaning of section 363(a) of the Bankruptcy Code, provided, however, that nothing herein constitutes a finding of fact by the Court that the items listed in this paragraph F are Cash Collateral.

G.    *Debtors' Stipulations*.    Subject to the provisions and limitations contained in paragraph 25 hereof, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i)    *Prepetition Bridge Loan*.    Pursuant to that certain Loan and Security Agreement dated as of July 14, 2023 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Loan Documents**") by and among (a) Novan, Inc. ("**Novan**"), as borrower, (b) EPI Health, as borrower (together with Novan, the "**Prepetition Loan Parties**") and (c) Ligand (together with its successors and assigns, the "**Prepetition Secured Lender**"), the Prepetition Loan Parties incurred "Obligations" (as defined in the Prepetition Credit Agreement, the "**Prepetition Bridge Loan Obligations**") to the Prepetition Secured Lender on a joint and several basis;

(ii)    *Prepetition Bridge Loan Obligations*.    As of the Petition Date, the Prepetition Loan Parties were justly and lawfully indebted and liable to the Prepetition Secured Lender without defense, challenge, objection, claim, counterclaim, or offset of any kind, for the Loan (as defined in the Prepetition Credit Agreement) in the aggregate principal amount of not less than $3,000,000, plus accrued and unpaid interest thereon and any fees, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and any other Prepetition Bridge Loan Obligations incurred under the Prepetition Loan Documents;

(iii)    *Validity of Prepetition Bridge Loan Obligations*.    The Prepetition Bridge Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition Bridge Loan Obligations or any payment made to the Prepetition Secured Lender or applied to or paid on account of the Prepetition Bridge Loan Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(iv)    *Validity, Perfection and Priority of Prepetition Liens*.    As of the Petition Date, pursuant to the Prepetition Loan Documents, the Prepetition Loan Parties granted to the Prepetition Secured Lender, a security interest in and continuing lien on (the "**Prepetition Liens**") substantially all of their respective assets and property, including (but, for the avoidance of doubt, not including any Excluded Assets (as defined in the Prepetition Credit Agreement)) (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Collateral (as defined in the Prepetition Credit Agreement), which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition Collateral**"), junior, subject and subordinate only to the extent such permitted liens are (a) valid, perfected and non-avoidable on the Petition Date, or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "**Prepetition Permitted Liens**");

(v)     *Waiver of Challenge*.  None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vi)     *No Control*.  The Prepetition Secured Lender does not control (or have not in the past controlled) any of the Debtors or their respective properties or operations, does not have authority to determine the manner in which any Debtor's operations are conducted or control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents;

(vii)     *No Claims or Causes of Action*.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Lender and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and the Prepetition Secured Lender that is in existence as of the Petition Date; and

(viii)     *Release*.  Effective as of the date of entry of this Interim Order, each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Lender, the DIP Lender, and each of their respective Representatives (solely in their capacities as such, and subject to entry of a Final Order that so provides) (collectively, the "**Released Parties**"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or

unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition Loan Documents, the DIP Facility, the DIP Documents, the DIP Roll-Up Loans, and the negotiation thereof, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Interim Order; *provided* that the release set forth in this section shall not release (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines has resulted from such Released Party's bad faith, fraud, gross negligence or willful misconduct or (ii) the DIP Lender from honoring its obligations to the Debtors under the DIP Documents.

> H.     *Findings Regarding DIP Financing and Use of Cash Collateral.*

(i)     Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Documents.

(ii)     The Debtors have demonstrated an immediate and critical need to obtain the DIP Financing and to use Prepetition Collateral (including Cash Collateral) in accordance with the Approved Budget (as defined below) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to satisfy other working capital and operational needs, and to fund administrative expenses of these Chapter 11 Cases.  Access to sufficient working capital and liquidity under the DIP Documents and other financial accommodations provided under the DIP Documents, as well as through the use of Cash Collateral and other Prepetition Collateral, is necessary for the avoidance of immediate irreparable harm to the Debtors' estates and for the preservation and maintenance of their going concern value.

(iii)    The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lender under the DIP Documents. The Debtors are also unable to obtain secured credit without granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined herein) on the terms and subject to the conditions set forth in this Interim Order and in the DIP Documents.

(iv)    The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated by the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitutes Prepetition Collateral and the Prepetition Secured Lender's Cash Collateral under section 363(a) of the Bankruptcy Code. The Debtors desire and need to use the Prepetition Secured Lender's Cash Collateral for general corporate purposes.

(v)    Based on the Motion, the First Day Declaration, and the record and argument presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the adequate protection granted to the Prepetition Secured Lender and Bay View as provided in paragraphs 12–13 of this Interim Order (collectively, the "**Adequate Protections**"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(vi)    This Interim Order, the DIP Financing, the Adequate Protections, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Lender, and the Prepetition Secured Lender (each of whom acted in good faith in negotiating such documents), and all of the loans and

other financial accommodations extended by the DIP Lender to the DIP Loan Parties under, in respect of, or in connection with, the DIP Financing and the DIP Documents (including the granting of the Adequate Protections provided herein), shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and its respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or modified on appeal.

(vii)    Subject to paragraph 25 of this Interim Order with respect to the Prepetition Secured Lender, the Prepetition Secured Lender and the DIP Lender have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this Interim Order, the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and the DIP Documents. Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Lender and the DIP Lender shall be and hereby are indemnified (as applicable) as provided in the Prepetition Loan Documents and the DIP Documents, as applicable, including, without limitation, Section 11.4 of the DIP Credit Agreement.

(viii)    The Prepetition Secured Lender and Bay View are entitled to the Adequate Protections for any Diminution in Value as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed Adequate Protections are fair and reasonable.

(ix)    To the extent their consent is required, the Prepetition Secured Lender and Bay View have consented or are deemed to have consented to the use of, as applicable, the Prepetition Collateral, including Cash Collateral, the imposition of the Carve-Out, and the priming of the Prepetition Liens on the Prepetition Collateral by the DIP Liens (subject to the Prepetition Permitted Liens), on the terms set forth in this Interim Order and the DIP Documents; *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by the Prepetition Secured Lender for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) other than as contemplated by this Interim Order, or (z) prejudice, limit or otherwise impair the rights of the Prepetition Secured Lender or Bay View to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties, to object to such relief are hereby preserved.

(x)    The Debtors have prepared and delivered to the advisors to the DIP Lender an initial budget (the "**Initial DIP Budget**"), attached hereto as **Exhibit 2**.  The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Credit Agreement and this Interim Order.  Each subsequent budget, once approved by the DIP Lender (in accordance with the DIP Credit Agreement), shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget, an "**Approved Budget**").

(xi)     Subject to entry of a Final Order that so provides, the Prepetition Secured Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Lender with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

I.     *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and the applicable Local Rules.  Absent the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Documents, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The Motion and this Interim Order comply with the requirements of Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and the applicable Local Rule.

J.     *Prepetition Permitted Liens; Continuation of Prepetition Liens*.  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Lender, or the Prepetition Secured Lender to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Lien.  Subject to a Final Order that so provides, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Lien, and such right is expressly subject to the DIP Liens (as defined herein) and Prepetition Liens.  The Prepetition Liens and the DIP Liens are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens.

K.    *DIP Roll-Up Loans.* Upon entry of this Interim Order, but subject to the provisions of paragraph 25 of this Interim Order*,* all outstanding Prepetition Bridge Loan Obligations shall be rolled up, and converted into DIP Obligations (the "**DIP Roll-Up Loans**"). The Prepetition Secured Lender who is also the DIP Lender would not have consented to extend the DIP Financing or other financial accommodations to the Debtors without the inclusion of the DIP Roll-Up Loans in the DIP Obligations.

Based upon the Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted.* The Motion is granted on an interim basis as set forth in this Interim Order. All objections to the Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby overruled on the merits.

2.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    The DIP Loan Parties are hereby authorized to execute, deliver, enter into and perform all of their obligations under the DIP Documents and perform such other acts as may be necessary, appropriate or desirable in connection therewith. Upon entry of this Interim Order, and in addition to all outstanding Prepetition Bridge Loan Obligations that are deemed rolled up and converted into DIP Obligations in paragraph 2(b) below, the Borrowers are hereby authorized to borrow up to $3,500,000 in the aggregate pursuant to the DIP Credit Agreement, subject to any limitations set forth in the DIP Documents. The proceeds of the DIP Loans shall be used for all purposes permitted under the DIP Documents and the Interim Order, subject to and in accordance with the Approved Budget (subject to any permitted variances).

(b)    Upon entry of this Interim Order, all outstanding Prepetition Bridge Loan Obligations shall be deemed rolled up and converted into DIP Obligations, subject to the

provisions of paragraph 25 hereof.  The Debtors are authorized to take such acts as shall be necessary or desirable to effect the roll-up and conversion of the Prepetition Bridge Loan Obligations to DIP Obligations.

(c)    In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and to pay all fees, expenses and indemnities (subject to Court approval and after notice and a hearing) in connection with or that may be reasonably required, necessary, or desirable in connection with the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other non-material modifications to and under the DIP Documents, in each case, in such form as the DIP Lender may accept, it being understood that further approval of this Court shall be required for amendments, waivers, consents or other modifications, that, for example, shorten the maturity of the DIP Facility, increase the aggregate DIP Commitments, increase the rate of interest or fees payable thereunder, or release any DIP Liens.  Material modifications to the Approved Budget shall be filed under separate notice with this Court;

(iii)    the non-refundable payment to the DIP Lender of any fees in connection with the DIP Facility, including commitment fees and exit fees, in each case, as provided in the DIP Documents; the payment of the foregoing amounts shall be irrevocable, and shall be deemed to have been approved upon entry of this Interim Order except for exit fees, which

are subject to entry of a Final Order that so provides, whether any such obligations arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;  and

(iv)    the non-refundable payment to the DIP Lender for fees and expenses incurred by its professionals, whether any such fees and expense arose before or after the Petition Date, as provided under the terms of the DIP Credit Agreement and subject to a cap in the aggregate amount of $675,000 unless an Event of Default (as defined below) has occurred.  Any such professional shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, this Court for compensation and reimbursement of fees and expenses but shall submit copies of summary invoices to the Debtors, the U.S. Trustee, and counsel for any Committee.  The summary invoices shall provide only the total aggregate number of hours billed and a summary description of services provided and fees and the expenses incurred by the applicable party and/or professionals in sufficient detail to allow a party to determine the reasonableness of such fees and expenses, and shall be subject to all applicable privilege and work product doctrines.  If the Debtors, U.S. Trustee or any Committee object to the reasonableness of the fees and expenses of any professional and cannot resolve such objection within ten (10) days after receipt of such invoices, then the Debtors, U.S. Trustee, or the Committee, as the case may be, shall file with this Court and serve on such professional an objection (the "**Fee Objection**"), and any failure by any such party to file a Fee Objection within such ten (10) day period shall constitute a waiver of any right of such party to object to the applicable invoice.  Notwithstanding any provision herein to the contrary, any objection to, and

any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of the professional shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed.

3.      *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and its estate in accordance with their respective terms and this Interim Order, and any successors thereto, including any trustee appointed in these Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").  Upon execution and delivery of the DIP Documents, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to the DIP Lender, in such capacities, in each case, under the DIP Documents and this Interim Order, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.  Except as permitted hereby, no obligation, payment, transfer, or grant of security hereunder or under the DIP Documents to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or

common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    *Carve-Out.*

(a)    As used herein, "**Carve-Out**" means the following expenses: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not exceeding $25,000 (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (plus any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors) (the "**Allowed Debtor Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code, including, for the avoidance of doubt, counsel of the Debtors (the "**Debtors Professionals**") and unpaid fees and expenses (the "**Allowed Committee Professional Fees**" and together with the Allowed Debtor Professional Fees, collectively, the "**Allowed Professional Fees**") incurred by persons or firms retained by a Committee (if appointed), pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice (these clauses (i) through (iii), the "**Pre-Carve Out Amounts**") and (iv) Allowed Professional Fees not to exceed $400,000, incurred after the first business day following delivery by the DIP Lender of the Carve Out Trigger

Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"). For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtors, their restructuring counsel, the U.S. Trustee, and counsel to the Committee (if appointed), which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined below), stating that the Post-Carve Out Trigger Notice Cap has been invoked.  Notwithstanding the foregoing, the Carve Out Trigger Notice shall be delivered to the required notice parties on the Maturity Date (as defined in the DIP Credit Agreement).

(b)    <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the DIP Lender to the Debtors with a copy to counsel to the Committee (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP Commitment (each, as defined in the DIP Credit Agreement), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for DIP Loans under the DIP Commitment, in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any

Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.  On the first business day after the DIP Lender gives such notice, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Commitment following an Event of Default, or the occurrence of the Maturity Date, the DIP Lender shall be obligated to make DIP Loans to the Borrowers to fully fund the Carve Out Reserves in an amount not to exceed the aggregate undrawn amount of DIP Commitment.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Lender in accordance with their rights and priorities as set forth in this Interim Order.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such

excess shall be paid to the Prepetition Secured Lender on account of any Prepetition Bridge Loan Obligations that remain outstanding to the extent not rolled up and converted into DIP Obligations, and then, to the extent all DIP Obligations and Prepetition Bridge Loan Obligations have been indefeasibly paid in full in cash, any excess shall be paid to the Debtors' estate.  Notwithstanding anything to the contrary in the DIP Documents, or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 4, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 4, prior to making any payments to the DIP Lender or the Prepetition Secured Lender, as applicable.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facility, or in any Prepetition Loan Document, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protections and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Bridge Loan Obligations.

(c)      No Direct Obligation To Pay Allowed Professional Fees.  Neither of the DIP Lender nor the Prepetition Secured Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Lender, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)      Payment of Carve-Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date

in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

5.      *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations, including the DIP Roll-Up Loans, shall constitute allowed superpriority administrative expense claims (the "**DIP Superpriority Claims**") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties (but for the avoidance of doubt, junior to the Carve-Out), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, as set forth in section 364(c)(1) of the Bankruptcy Code.  The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof, including upon entry of a Final Order that so provides, proceeds or property recovered, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**") as a result of any claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**"), but excluding the Carve-Out Reserves and amounts held therein other than the Debtors' reversionary interest therein, and subject only to the Carve-Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or modified on appeal.

6.      *DIP Liens*.  As security for the DIP Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution,

recordation or filing of any perfection document or instrument, or the possession or control by the DIP Lender of, or over, any Collateral (as defined under the DIP Credit Agreement), without any further action by the DIP Lender, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "**DIP Liens**") are hereby granted to the DIP Lender (all property identified in clauses (a) through (c) below being collectively referred to as the "**DIP Collateral**," and, together with the Prepetition Collateral, the "**Collateral**"):

(a)     *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject only to the Carve-Out) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including upon entry of a Final Order Avoidance Actions and Avoidance Proceeds, but excluding Carve-Out Reserves (and any amounts held therein) (collectively, the "**Unencumbered Property**").

(b)     *Liens Priming the Prepetition Secured Lender's Liens*.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest (subject to the Carve-Out) in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition Collateral, regardless of where located (the "**DIP Priming Liens**").  Notwithstanding anything herein to the contrary, the DIP Priming Liens shall be (A) senior in all respects to the Prepetition Liens on the Prepetition Collateral, (B) senior to any Adequate Protection Liens on the Prepetition Collateral and (C) not subordinate to any lien,

security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code. The Prepetition Liens with respect to the Prepetition Collateral shall be primed by and made subject and subordinate to the DIP Priming Liens.

(c)     *Liens Junior to Certain Other Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of the DIP Loan Parties that, on or as of the Petition Date, is subject to any Prepetition Permitted Liens, which shall be immediately junior and subordinate to any such Prepetition Permitted Liens, *provided*, that with respect to Prepetition Collateral subject to any Prepetition Permitted Liens of Bay View, upon the Obligations (as defined under the Prepetition Factoring Agreement) that are secured by an existing prepetition security interest in favor of Bay View first reaching a zero balance, then the DIP Liens granted to the DIP Lender shall be elevated to rank senior to the Prepetition Permitted Liens of Bay View.

(d)     *No Senior Liens*. The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with, other than as to any Prepetition Permitted Liens, (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (C) any intercompany liens; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

7.     *Protection of DIP Lender's and Prepetition Secured Lender's Rights.*

(a)     The Debtors shall at all times comply with the Approved Budget, subject to the Permitted Variances (as defined below).  Commencing on the second Thursday after the date of entry of the Interim Order, and on a weekly basis thereafter on each applicable Thursday, or the successive business day if such Thursday is not a business day, a "**Variance Report Date**"), the Debtors shall deliver by email to the DIP Lender a variance report (each, a "**Budget Variance Report**") for the immediately preceding two-week Variance Period (as defined below), comparing, in each case not to exceed 15% (the "**Permitted Variances**"), (i) actual aggregate cumulative cash disbursements for such Variance Period to the projected disbursements for such Variance Period (without consideration of Allowed Professional Fees to be paid during such Variance Period) and (ii) actual aggregate cumulative cash receipts for such Variance Period to the projected cash receipts for such Variance Period, and in each case, set forth in the Budget for such two-week look-back period (each such period, a "**Variance Period**").  For clarity, the Permitted Variances do not increase in any way, the DIP Lender's obligation to increase the amount of the DIP Facility.

(b)     The Debtors shall provide (a) counsel to the Prepetition Secured Lender, and (b) advisors to the Committee, if one is appointed, with all reporting and other information required to be provided to the DIP Lender under the DIP Documents.  In addition to, and without limitation, whatever rights to access the DIP Lender has under the DIP Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the DIP Lender to (i) have access to and inspect the Debtors' assets, (ii) visit and inspect any of the Debtors' respective properties, to tour the Debtors' business premises and other properties, to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors, (iii) examine

the Debtors' books and records, and (iv) discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors.

(c)     The automatic stay of section 362 of the Bankruptcy Code is hereby modified and vacated to the extent necessary to permit the Debtors, the DIP Lender and the Prepetition Secured Lender to accomplish the transactions contemplated by this Interim Order.

8.     *Limitation on Charging Expenses Against Collateral*.  Subject to entry of a Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of these cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Prepetition Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender and the Prepetition Secured Lender, and no consent shall be implied from any action, inaction or acquiescence by any of the DIP Lender or Prepetition Secured Lender, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender or Prepetition Secured Lender to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

9.     *No Marshaling*.  Subject to entry of a Final Order that so provides, in no event shall the DIP Lender or the Prepetition Secured Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Bridge Loan Obligations, or the Prepetition Collateral, as applicable.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Lender.

10.     *Payments Free and Clear*.  Subject to entry of a Final Order that so provides, and subject to paragraph 25 as to the Prepetition Lender, any and all payments or proceeds remitted to

the DIP Lender or Prepetition Secured Lender pursuant to the provisions of this Interim Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

11.     *Use of Cash Collateral.*  The Debtors are hereby authorized, solely on the terms and conditions of this Interim Order, to use all Cash Collateral in accordance with the DIP Documents and Approved Budget (subject to the Permitted Variances).

12.     *Adequate Protection of Prepetition Secured Lender.*  Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of the Prepetition Secured Lender's interests in the Prepetition Collateral (including Cash Collateral) for the aggregate Diminution in Value and as an inducement to consent to the priming of the Prepetition Liens, the use of its Cash Collateral and the imposition of the Carve-Out, the Prepetition Secured Lender is granted the following Adequate Protection (collectively, the "**Adequate Protection Obligations**"):

(a)     *Adequate Protection Liens.*  The Prepetition Secured Lender is hereby granted, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition Secured Lender's Diminution in Value upon all of the DIP Collateral (the "**Adequate Protection Liens**"), subject and subordinate to (A) the DIP Liens, (B) the Prepetition Permitted Liens, if any, (C) with respect to the DIP Collateral of Debtor EPI Health and its estate, the Bay View Adequate Protection Liens, and (D) the Carve-Out.

(b)    *Prepetition Secured Lender's Adequate Protection Superpriority Claim*. The Prepetition Secured Lender is hereby granted an allowed superpriority administrative expense claim against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition Secured Lender's Diminution in Value under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claim**") which Adequate Protection Superpriority Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof.   The Adequate Protection Superpriority Claim shall be subject and subordinate only to (i) the Carve-Out and (ii) the DIP Superpriority Claims.

(c)    *Prepetition Secured Lender Fees and Expenses*.   As further adequate protection, subject solely to the Carve-Out, the DIP Loan Parties shall currently pay to the Prepetition Secured Lender, in cash, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition Secured Lender's advisors, including, without limitation, those of Morgan, Lewis & Bockius LLP and local legal counsel (if any) (collectively, the "**Adequate Protection Fees and Expenses**"), subject to the review procedures set forth in paragraph 2(c)(iv) of this Interim Order;

(d)    *Postpetition Interest Payments*.   Subject to the entry of a Final Order that so provides, to the extent that the DIP Roll-Up Loans is less than the full amount of the Prepetition Bridge Loan Obligations outstanding as of the Petition Date, the Prepetition Secured lender shall receive current cash payment during the Chapter 11 Cases of all accrued interest on the then outstanding Prepetition Bridge Loan Obligations as such interest becomes due and payable at the Contract Rate (as defined in the Prepetition Credit Agreement as in effect on the Petition Date).

13.    *Adequate Protection of Bay View*.   Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of its interests in the Prepetition Collateral (including Cash Collateral) of Debtor EPI Health and its estate for the aggregate Diminution in Value (if any),

the use of Cash Collateral of Debtor EPI Health, and the imposition of the Carve-Out, Bay View

is granted the following Adequate Protection:

(a)    *Bay View Adequate Protection Liens*.  Bay View is hereby granted, effective

and perfected upon the date of this Interim Order and without the necessity of the execution of any

mortgages, security agreements, pledge agreements, financing statements or other agreements, a

valid, perfected replacement security interest in and lien on account of Bay View's Diminution in

Value (if any) upon the same property of Debtor EPI Health on which Bay View had a perfected,

first-priority security interest and lien prior to the Petition Date (the "**Bay View Adequate**

**Protection Liens**"), whether arising prepetition or postpetition, which liens and security interest

shall be subordinate only to (A) any Prepetition Permitted Lien and (B) the Carve-Out.

14.    *Perfection of DIP Liens, Adequate Protection Liens and Bay View Adequate*

*Protection Liens.*

(a)    Without in any way limiting the validity of the automatic perfection of the

DIP Liens, the Adequate Protection Liens and the Bay View Adequate Protection Liens under the

terms of this Interim Order, the DIP Lender, the Prepetition Secured Lender and Bay View are

hereby authorized, but not required, to execute in the name of the DIP Loan Parties or the

Prepetition Loan Parties (as applicable), as their true and lawful attorneys (with full power of

substitution, to the maximum extent permitted by law) and to file or record financing statements,

trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in

any jurisdiction, or take possession of certificated securities, or take any other similar action in a

manner not inconsistent herewith to document, validate or perfect the liens and security interests

granted to them hereunder (the "**Perfection Actions**").  All such Perfection Actions shall be

deemed to have been taken on the date of entry of this Interim Order.  The automatic stay shall be

modified to the extent necessary to permit the DIP Lender, the Prepetition Secured Lender and

Bay View to take any Perfection Action.  For the avoidance of doubt and subject to paragraph 25 of this Interim Order with respect to the Prepetition Secured Lender, the DIP Liens, the Adequate Protection Liens and the Bay View Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order, whether or not the DIP Lender, the Prepetition Secured Lender or Bay View take such Perfection Actions.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Lender, the Prepetition Secured Lender and Bay View, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized to accept a certified copy of this Interim Order for filing and/or recording, as applicable.

15.    *Preservation of Rights Under this Interim Order.*

(a)    Other than the claims and liens expressly granted or permitted by this Interim Order, including the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any

regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) junior to any intercompany liens or security interests of the DIP Loan Parties.

(b)    No rights, protections or remedies of the DIP Lender or the Prepetition Secured Lender granted by this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

16.    *Access to Books and Records*. The Debtors will (i) maintain books, records, and accounts to the extent and as required by the Prepetition Loan Documents and the DIP Documents, (ii) cooperate with, consult with, and provide to the DIP Lender and the Prepetition Secured Lender all such information and documents that any or all of the Debtors are obligated to provide under the Prepetition Loan Documents and the DIP Documents or the provisions of this Interim Order or as otherwise reasonably requested by the DIP Lender and the Prepetition Secured Lender, (iii) during normal business hours, upon reasonable advance notice, permit consultants, advisors and other representatives (including third party representatives) of the DIP Lender and the Prepetition Secured Lender to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective senior management independent public accountants to the extent required by the DIP Documents or the Prepetition Loan Documents, and (iv) permit the DIP Lender, the Prepetition Secured Lender, and their respective consultants, advisors and other representatives, to consult with the Debtors'

management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, as provided for in the DIP Documents and the Prepetition Loan Documents.

17.     [Reserved.]

18.     *Maintenance of Collateral*.  Until the indefeasible payment in full in cash of all DIP Obligations, all Prepetition Bridge Loan Obligations, and the termination of the DIP Commitment, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Documents or the Prepetition Credit Documents, as applicable; and (b) maintain the cash management system consistent with the terms and conditions of the Cash Management Order and the DIP Documents.

19.     *Survival*.  Pending entry of a Final Order, notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these cases to a Successor Case: (A) the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the DIP Liens, the Adequate Protection Liens, and the Prepetition Liens shall continue in full force and effect, shall maintain their priorities as provided in this Interim Order, and shall remain binding on all parties in interest until all DIP Obligations, Adequate Protection Obligations and Prepetition Bridge Loan Obligations shall have been indefeasibly paid in full in cash; (B) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(a)     Pending entry of a Final Order, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender or Prepetition Secured Lender, as applicable, of the effective date of such reversal, modification,

vacatur, or stay; or (ii) the validity, priority, and enforceability of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, and the Carve-Out, each to the fullest extent provided under section 364(e) of the Bankruptcy Code.  Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, DIP Superpriority Claims, and the Adequate Protection Superpriority Claims incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Secured Lender, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and the Prepetition Secured Lender shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under section 364(e) of the Bankruptcy Code.

(b)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Lender and the Prepetition Secured Lender granted by this Interim Order and the DIP Documents, as well as the Carve-Out, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases.  The terms and provisions of this Interim Order and the DIP Documents shall continue in full force and effect in these Chapter 11 Cases and in any Successor Cases until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash, the DIP Commitments have been terminated, and all Prepetition Bridge Loan Obligations have been indefeasibly paid in full in cash.

20.    *Termination Event.* On the applicable Termination Date (as defined below), all DIP Obligations shall be immediate due and payable and, all DIP Commitment under the DIP Facility will terminate.

(a)    Until the DIP Obligations are indefeasibly paid in full and all commitments thereunder are terminated, the occurrence of any of the following events, unless waived by the DIP Lender in writing (which may be by electronic mail) and in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "**Events of Default**"):

(i)    the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants or obligations under this Interim Order, including, without limitation, failure to make any payment under this Interim Order when due or comply with any Milestones;

(ii)    the occurrence and continuation of any Events of Default under, and as defined in, the DIP Credit Agreement or any other DIP Documents; and

(iii)    the Debtors' failure to comply with the terms of this Interim Order shall constitute Events of Default.

(b)    As a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to the following milestones (the "**Milestones**"):

(i)    No later than five (5) business days after the Petition Date, entry by the Court of this Interim Order;

(ii)    Subject to entry of a Final Order that so provides, no later than thirty-five (35) calendar days after the Petition Date, entry by the Court of an order approving the Asset Purchase Agreement and the

> > Bidding Procedures (as defined in the DIP Credit Agreement) for
> > the Purchased Assets;
>
> (iii)    No later than thirty-five (35) calendar days after the Petition Date,
> entry by the Court of the Final Order;
>
> (iv)    All subsequent Milestones set forth in the DIP Credit Agreement
> shall be subject to entry of a Final Order.

For the avoidance of doubt, unless waived in writing by the DIP Lender in its sole discretion, the failure of the Debtors to meet the Milestones by the applicable specified deadlines set forth herein shall constitute an Event of Default under the DIP Documents and this Interim Order.

21.    *Rights and Remedies Upon Event of Default*. Upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of Bankruptcy Code section 362, without any application, motion or notice to, hearing before, or order from the Court, and subject only to the terms of this Interim Order: (a) the DIP Lender may send a written notice to the Debtors, counsel to the Committee (if any), and the U.S. Trustee (any such notice shall be referred to herein as a "**Termination Declaration**"), which shall be filed on the docket of the Chapter 11 Cases, declaring (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (2) the DIP Commitment of the DIP Lender to be terminated, whereupon such commitments and obligation shall be terminated to the extent any such commitment remains under the DIP Facility, (3) the termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Lender other than those contained in para 4.b. hereof with respect to funding the Carve-out Reserves, but without affecting any of the DIP Liens or the DIP Obligations, and (4) the application of the Carve-Out has occurred following the delivery of the Carve Out Trigger Notice to the Debtors; (b) interest, including, where applicable, default interest,

shall accrue and be paid as set forth in the DIP Documents; and (c) upon delivery of the Termination Declaration, the DIP Lender shall be deemed to have declared a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, other than to pay expenses set forth in the Approved Budget that are necessary to avoid immediate and irreparable harm to the Debtors' estates absent further order of the Court. The earliest date on which a Termination Declaration is delivered by the DIP Lender and filed on the docket shall be referred to herein as the "**Termination Date**." Following a Termination Date, neither the DIP Lender nor the Prepetition Secured Lender shall be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP Facility, absent further order of the Court. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee (if appointed) and the U.S. Trustee.

22.     *Emergency Hearing*. Upon the delivery of a Termination Declaration, the Debtors, the Committee (if appointed), the DIP Lender, and the Prepetition Secured Lender consent to a hearing on an emergency basis regarding, among other things, such Termination Declaration, after which the Court may grant any appropriate relief.  During the five (5) business days following the date that a Termination Declaration is delivered (such five (5) business day period, the "**Remedies Notice Period**"), the Debtors shall continue to have the right to use Cash Collateral in accordance with the terms of the Interim Order, solely to pay necessary expenses set forth in the Approved Budget to avoid immediate and irreparable harm to the Estates. At the end of the Remedies Notice Period, unless the Court has entered an order to the contrary, the Debtors' right to use Cash Collateral shall immediately cease, unless otherwise provided herein and the DIP Lender shall have the rights set forth immediately below.

23.     *Certain Rights and Remedies Following Termination Date*. Following the Termination Date and upon either the expiration of the Remedies Notice Period or pursuant to an

order of the Court (which may authorize the remedies set forth in this paragraph or any other appropriate remedy as then determined by the Court) upon an emergency motion by the DIP Lender to be heard on no less than three (3) business days' notice (and the Debtors shall not object to such shortened notice) (the "**Termination Enforcement Order**"), the DIP Lender shall be entitled to immediate relief from the automatic stay to exercise all rights and remedies in accordance with the DIP Documents, the DIP Orders and as a secured lender under applicable law, and shall be permitted to satisfy the relevant DIP Obligations and DIP Liens based on the priorities set forth in the DIP Documents, subject to the Carve-Out and any Prepetition Permitted Liens. Following entry of the Termination Enforcement Order, except as otherwise ordered by the Court (including in any Termination Enforcement Order): (a) the Debtors are hereby authorized and directed to, with the exclusion of the Carve-Out, remit to the DIP Lender one-hundred percent (100%) of all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Documents, and (b) the Debtors shall take all action that is reasonably necessary to cooperate with the DIP Lender in the exercise of their rights and remedies and to facilitate the realization of the DIP Collateral by the DIP Lender as set forth in the DIP Documents.

24.     *Discharge*. Except as otherwise agreed in writing by the DIP Lender and the Prepetition Secured Lender, the DIP Obligations and the Adequate Protection Obligations of the Debtors shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization.  If any of the Debtors propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment (including by credit bid) of the DIP Obligations, the Prepetition Bridge Loan Obligations, and the payment of

the Debtors' Adequate Protection Obligations, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "**Prohibited Plan or Sale**") without the written consent of the DIP Lender and the Prepetition Secured Lender, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder.

25.    *Effect of Stipulations on Third Parties*.   The Debtors' stipulations, admissions, agreements and releases contained in Paragraph G of this Interim Order shall be binding upon the Debtors in all circumstances and for all purposes.   The Debtors' stipulations, admissions, agreements and releases contained in Paragraph G of this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or other party in interest with requisite standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than seventy-five (75) calendar days following entry of the Interim Order (the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Bridge Loan Obligations or the Prepetition Liens, or (B) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Lender or its respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "**Representatives**") in connection with or related to the

Prepetition Loan Documents, the Prepetition Bridge Loan Obligations, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the Prepetition Loan Parties under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees

appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Lender and its Representatives shall be deemed forever waived, released and barred. If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in Paragraph G of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction granting a successful Challenge. Nothing in this Interim Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Bridge Loan Obligations or Prepetition Liens. In the event a Committee (if appointed) or other party interest files a motion to obtain standing to prosecute a Challenge in accordance with this paragraph 25, the Prepetition Secured Lender and the Debtors waive and agree not to assert the defense that derivative standing is not available because EPI Health is a Delaware limited liability company; provided that all other defenses to, and arguments against, any request for standing to pursue a Challenge are hereby expressly reserved and not waived, prejudiced or limited in any way by virtue of the foregoing. For the avoidance of doubt, the Challenge Period and Challenges to the extent set forth this paragraph 25 are applicable solely against the Prepetition Lender in connection with or related to the Prepetition Loan Documents, the Prepetition Bridge Loan Obligations, the Prepetition Liens and the Prepetition Collateral, and are not applicable against the DIP Lender in connection with or

related to the DIP Loans (other than the DIP Roll-Up Loans) that are approved by this Interim Order.

26.    *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against the DIP Lender, or the Prepetition Secured Lender, or their respective Representatives (in their capacities as such), or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Bridge Loan Obligations, Adequate Protection Liens, or Adequate Protection Superpriority Claims or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Bridge Loan Obligations and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Documents or the Prepetition Loan Documents in respect of the Prepetition Bridge Loan Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may be used by the Committee to investigate, but not to prosecute, (A) the claims and liens of the Prepetition Secured Lender and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Lender, up to an aggregate cap of no more than $50,000 (the "**Investigation Cap**"), (b) [reserved]; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition

Secured Lender or the DIP Lender under this Interim Order, the Prepetition Loan Documents or the DIP Documents, as applicable, other than in accordance with this Interim Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims permitted by the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection Superpriority Claims; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are authorized by the Court, agreed to in writing by the DIP Lender, expressly permitted under this Interim Order or under the DIP Documents (including the Approved Budget, subject to permitted variances), in each case unless all DIP Obligations, Prepetition Bridge Loan Obligations, Adequate Protection Obligations, and claims granted to the DIP Lender and Prepetition Secured Lender under this Interim Order, have been paid in full in cash or otherwise agreed to in writing by the DIP Lender and the Prepetition Secured Lender, as applicable.

27. *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, the DIP Documents or Prepetition Loan Documents, the provisions of this Interim Order shall govern.

28. *Binding Effect; Successors and Assigns*.  Subject to paragraph 25 of this Interim Order where applicable, the DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Lender, the Prepetition Secured Lender, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the

property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lender, the Prepetition Secured Lender, the Debtors, and their respective successors and assigns; *provided* that the DIP Lender and the Prepetition Secured Lender shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

29.     Nothing in this Interim Order, the DIP Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.

30.     *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral), none of the DIP Lender or Prepetition Secured Lender shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Lender or Prepetition Secured Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

31.    *Proofs of Claim.*  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, the Prepetition Secured Lender shall not be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Bridge Loan Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition Loan Documents or this Interim Order.  The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition Bridge Loan Obligations set forth in this Interim Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition Loan Documents and this Interim Order.  The provisions of this paragraph 31 are intended solely for the purpose of administrative convenience and shall not affect the right of the Prepetition Secured Lender (or its successors in interest) to vote on any plan filed in these Chapter 11 Cases.  The DIP Lender shall not be required to file proofs of claim with respect to the DIP Obligations.

32.    *Insurance.*  Upon entry of this Interim Order, the Debtors shall take action to name the DIP Lender an additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

33.    *Allocation and Payment of All Sale Proceeds to Ligand to Pay DIP Obligations and Prepetition Bridge Loan Obligations.*  In connection with any sale or other disposition of the Debtors' or their estates' assets, including any sales occurring under or pursuant to section 363 of the Bankruptcy Code, any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code (any of the foregoing sales or dispositions, a "**Sale**"), all proceeds from any such Sale shall be paid over to Ligand first to repay the DIP Obligations in full and thereafter to pay the Prepetition Bridge Loan Obligations (if such obligations have not been

converted to DIP Roll-Up Loans pursuant to a Final Order) after which the residual sale proceeds, if any, shall be held by the Debtors or the chapter 7 trustee (if appointed) until further order of the Court, unless the Court orders otherwise.

34.    *Preservation of 363(k) Rights*.  Subject to paragraph 25 of this Interim Order with respect to the Prepetition Lender, nothing in this Interim Order shall eliminate or otherwise impair Ligand's rights, in its capacity as a pre-petition secured lender and/or post-petition secured lender, including without limitation, the DIP Lender and/or the Prepetition Secured Lender, which rights are expressly reserved, preserved, and authorized hereby, to credit bid up to the full amount of the DIP Obligations, inclusive of the DIP Roll-Up Loans (and to the extent applicable, the Prepetition Bridge Loan Obligations), pursuant to section 363(k) of the Bankruptcy Code.  In such case, Ligand shall be considered a "Qualified Bidder" under the Sale Motion and any other bid procedures motion with respect to its rights to acquire all and any of the Debtors' and their estates' assets by credit bid and shall not be required to post a good faith deposit in connection with such sale.  Ligand also shall have the right, but no obligation, to supplement its credit bid with additional cash consideration such that the amount of additional cash plus the credit bid is the amount of Ligand's subsequent bid.  Ligand shall have the absolute right to assign, transfer, sell, or otherwise dispose of its rights to credit bid as set forth in this paragraph to any acquisition vehicle formed in connection with such credit bid or other designee.

35.    *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

36.    *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim Order.

37.    *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents and except with respect to the DIP Loan Parties, and upon the entry of a final order of this Court or a court of competent jurisdiction, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral, receives any DIP Collateral or any proceeds of the DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds thereof in trust for the benefit of the DIP Lender and shall immediately turn over such collateral or its proceeds to the DIP Lender, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

38.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

39.    *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

40.    *Necessary Action*.  The Debtors, the DIP Lender and the Prepetition Secured Lender are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.

41.    *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

42.    *Final Hearing*.  A final hearing to consider the relief requested in the Motion on a final basis shall be held on August 21, 2023 at 10:00 a.m. (Prevailing Eastern Time).

43.    *Objections*.  Any objections or responses to the Motion shall be filed on or prior to August 3, 2023 at 4:00 p.m. (Prevailing Eastern Time).  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, (b) counsel to the Debtors; (c) counsel to the DIP Lender and Prepetition Secured Lender, Morgan, Lewis & Bockius LLP, 101 Park Ave., New York, NY 10178, Attn: Craig A. Wolfe, Kristen V. Campana, Jason R. Alderson, and T. Charlie Liu, (c) the Office of the United States Trustee for the District of Delaware; and (d) if appointed, counsel to the Committee.

44.    The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the Notice Parties and to any other party that has filed with this Court a request for notices in these cases.

**Dated: July 21st, 2023**
**Wilmington, Delaware**

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

47