**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NOVAN, INC., et al.,[1]<br><br>                          Debtors. | Chapter 11<br><br>Case No. 23-10937 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 16, 242 & 246** |

**DECLARATION OF SIMON WEIN IN SUPPORT OF ENTRY OF
ORDERS AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES**

I, Simon Wein, declare as follows:

1. I am a Vice President in the Capital Structure Advisory Group at Raymond James & Associates, Inc. ("Raymond James"), investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors"). I submit this declaration (this "Declaration") in support of the Debtors' request, as set forth in *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and Designating Ligand Pharmaceuticals as a Stalking Horse Bidder, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures and (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances After the Auction and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) in the Alternative, Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances to Ligand Pharmaceuticals if Not Approved as the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digitals of the Debtors' federal tax identification number (if applicable), are: Novan, Inc. (7682) and EPI Health, LLC (9118). The corporate headquarters and the mailing address for the Debtors is 4020 Stirrup Creek Drive, Suite 110, Durham, NC 27703.

*Stalking Horse Bidder* (Docket No. 16) (the "Sale Motion") that the Court enter the Mayne sale order (the "Mayne Sale Order"), attached as Exhibit B to the *Notice of Debtors' Designation of Mayne Pharma LLC as Winning Bidder and the Mayne APA as the Winning Bid for Certain of the Debtors' Assets* (the "Mayne Notice") [Docket No. 242] and the Ligand sale order (the "Ligand Sale Order," and with the Mayne Sale Order, the "Sale Orders"), attached as Exhibit B to the *Notice of Debtors' Designation of Stalking Horse as Winning Bidder and the Stalking Horse APA as the Winning Bid for Certain of the Debtors' Assets* (the "Ligand Notice") [Docket No. 246].[2]

2. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony and Raymond James is receiving compensation only pursuant to its engagement letter, as approved by the Court.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Raymond James team, the Debtors' Board of Directors and management team, and the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations and financial affairs, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

## BACKGROUND AND QUALIFICATIONS

4. Raymond James is a subsidiary of Raymond James Financial, Inc. ("RJF"), a publicly traded (NYSE:RJF) full-service global investment banking firm offering investment banking, equity research, wealth management, institutional and private brokerage, and other service offerings to individual and institutional clients. RJF and its subsidiaries employ over 15,000 individuals in the United States alone, of which over 400 provide investment banking

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion, Mayne Notice or Ligand Notice, as applicable.

advisory services to firm clients. Since 2017, Raymond James has participated in raising over $310 billion in capital for its corporate clients and completed more than 1,055 advisory assignments, including over 870 M&A buy-side or sell-side advisory assignments.

5. Raymond James has a dedicated restructuring investment banking group of approximately 25 professionals with extensive experience advising companies, creditors' committees, and other constituents in complex situations involving underperforming businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings, or bankruptcy proceedings. Investment bankers at Raymond James have advised on, or been involved with, numerous restructuring-related or distressed transactions, both out-of-court and in chapter 11 cases, including, without limitation, sale, restructuring, reorganization, financing, financial opinion, and special advisory transactions.

6. Some representative engagements that investment bankers at Raymond James have led in prior chapter 11 cases and restructurings include: American Eagle Energy Corporation; American IronHorse Motorcycles, Inc.; ATLS Acquisition, LLC; BI-LO, LLC; Bluestem Brands, Inc.; Buccaneer Energy; Calpine Energy; CB Holding Corp.; CCNG Energy Partners; Clarus Therapeutics Holdings, Inc.; ColorSpot Holdings, Inc.; Dakota Plains Holdings, Inc.; Diamond Glass Companies, Inc.; Gateway Ethanol, LLC; Giordano's Enterprises, Inc.; Gulf Fleet Holdings, Inc.; Halt Medical, Inc.; Hipcricket, Inc.; HMX Acquisition Corp.; Hooper Holmes, Inc.; International Garden Products, Inc.; Just One More Restaurant Corp.; KeyLime Cove Waterpark, Inc.; Loehmann's, Inc.; LVI Intermediate Holdings, Inc.; Max & Erma's, Inc.; National Envelope Corporation; Personal Communication Devices, LLC; Phoenix Payment Systems, Inc.; PLx Pharma, Inc.; Proteus Digital Health, Inc.; Quanergy Systems, Inc.; Renew Energy, Inc.; Response

Genetics, Inc.; Robbins Bros. Corporation; Santa Fe Gold Corporation; SynCardia Systems, Inc.; SP Newsprint Holding LLC; Teligent, Inc.; and The Palm Restaurant Group, Inc.

7.      The Raymond James Life Sciences practice provides comprehensive advisory and financing capabilities to innovative businesses in the biotechnology, specialty pharmaceutical and generic pharmaceutical sectors. This team, consisting of more than 20 investment banking professionals, provides clients with solutions based on Raymond James' deep relationships with company management teams as well as venture, private equity and public market investors. In the last 10 years, the Raymond James Life Sciences practice has conducted more than 100 M&A, financing, and capital raise transactions.

8.      On August 21, 2023, the Debtors' retention of Raymond James as investment banker to the Debtors was approved [Docket No. 214]. In that capacity, members of the Raymond James team and I have been directly involved in the marketing and sale process described below.

**PRELIMINARY STATEMENT**

9.      Upon its engagement on June 10, 2023, Raymond James initiated an intensive, multifaceted strategy to maximize the value of the Debtors. The outreach included over 110 parties in a compressed timeframe. It involved exploring multiple transaction alternatives including mergers with publicly listed and privately owned companies in the United States and internationally, partial asset sales, bridge financing, and debtor in possession ("DIP") financing. Faced with the growing prospect of a chapter 7 filing in the days prior to the Petition Date, the Stalking Horse proposal with Ligand Pharmaceuticals Inc. ("Ligand") (the "Original Ligand Stalking Horse Proposal") was the sole viable prepetition option to preserve going concern value.

10.     Raymond James then leveraged the prepetition marketing process to promote accelerated competition from a competing bidder (the "Alternative Stalking Horse"). Extensive negotiations with the Alternative Stalking Horse yielded actionable financing and sale alternatives

which enabled the Debtors to materially improve the terms of the Original Ligand Stalking Horse Proposal. Together with the active efforts by the Official Committee of Unsecured Creditors ("UCC"), Ligand significantly improved the Original Ligand Stalking Horse Proposal terms. The results of the sale process provide meaningful recoveries for unsecured creditors, eliminate costly and uncertain litigation, and provide sufficient funding to effectuate a liquidating chapter 11 plan.

## COMPREHENSIVE MARKETING PROCESS

11.     The Debtors retained Raymond James on June 10, 2023 to quickly evaluate strategic alternatives and explore paths to address the liquidity crisis facing the Debtors. Raymond James led a dual-track prepetition marketing process that simultaneously sought buyers and financing solutions. Raymond James, together with the Debtors' management team and other advisors, prepared, among other things, a detailed teaser summarizing key investment highlights as well as a 59-page confidential information presentation ("CIP") to provide potential bidders with adequate information upon which to make a proposal for the Assets. Additionally, a virtual data room was established with over 1,250 documents. During the prepetition period, Raymond James and the Debtors contacted approximately 30 potential strategic buyers, of which 14 executed non-disclosure agreements. Additionally, Raymond James contacted nearly a dozen potential financing sources.

12.     Prior to the Petition Date, Raymond James and the Debtors engaged in extensive negotiations with multiple interested parties. Neither an out-of-court sale nor an out-of-court restructuring ultimately was actionable. The Debtors' emphasis shifted to a bankruptcy-facilitated transaction. These efforts culminated in the Original Ligand Stalking Horse Proposal and Proposed DIP Order, both dated July 17, 2023, with Ligand. Under the Original Ligand Stalking Horse Proposal, Ligand proposed to purchase substantially all of the Debtors' Assets for $15 million. In conjunction with filing the Original Ligand Stalking Horse Proposal on the Petition Date, the

Debtors also filed the initial bidding procedures [Docket No.16] ("Original Bidding Procedures"). The Original Bidding Procedures required Qualified Bidders to assume the Ligand Royalty Agreement. The Original Bidding Procedures also only allowed for the bifurcation of bids between the R&D Assets and Commercial Assets if the combined total amount exceeded $16.55 million. This threshold reflected the sum of the $15 million Stalking Horse bid amount, $1 million milestone payment owed to Ligand, $100,000 Minimum Continuing Bid amount and $450,000 Break Up Fee.

13. Within one day of the Petition Date, Raymond James began to restimulate the market. This outreach involved all 27 prepetition parties previously contacted, and 78 new potential bidders, consisting of financial and strategic parties. Raymond James contacted six additional potential bidders prior to the August 28, 2023 Qualified Bid deadline. Additionally, Raymond James contacted nine potential DIP financing providers to seek alternative postpetition financing for the Debtors on terms more favorable than the original Ligand terms.

14. The Debtors executed non-disclosure agreements with 31 potential bidders. Of the 31 parties under NDA, 23 were strategic buyers and 8 were financial parties. Raymond James worked closely with all of these active parties to market the assets and facilitate diligence.

15. On August 1, 2023, a series of formal objections were filed in opposition to the Original Ligand Stalking Horse Proposal by Mayne Pharma LLC ("Mayne"), Reedy Creek Investments LLC ("Reedy Creek"), and the Office of the United States Trustee ("UST"). The objections focused on two primary issues: first, the requirement that Qualified Bidders had to assume the Ligand Royalty Agreement as a condition for participation in the bidding process and second, the inability to separately bid on the R&D Assets and the Commercial Assets unless aggregate consideration exceeded $16.55 million.

16. The formal objections from Mayne, Reedy Creek, and the UST, catalyzed ongoing discussions with various counterparties to submit competing Stalking Horse and DIP financing proposals. These efforts generated competitive tension in the process and unlocked meaningful value.

17. The UCC was formed on August 2, 2023. Upon its formation, Raymond James actively engaged with the UCC professionals, alongside conducting counterparty outreach and facilitating due diligence. Collaborative efforts with the UCC focused on modifying the Original Bidding Procedures, with the objective of enhancing asset values and creditor recoveries.

18. The Debtors received two indications of interest ("IOI") in addition to the Original Ligand Stalking Horse Proposal. The two proposals included a bid for the purchase of certain of the Commercial Assets which was received on July 31, 2023, and a potential replacement Stalking Horse bid and DIP financing for all the Assets which was received on August 8, 2023 (the "Alternative Stalking Horse Proposal"). Though the Alternative Stalking Horse Proposal presented a lower purchase price and a reduced DIP financing amount, it eliminated the requirement for other Qualified Bidders to assume the Ligand Royalty Agreement. In advance of the August 15, 2023 Bidding Procedures Hearing, Raymond James and the Debtors' other advisors negotiated the Alternative Stalking Horse Proposal and sufficiently advanced it into an actionable alternative to the Original Ligand Stalking Horse Proposal with near-final definitive documentation.

## IMPROVED TERMS WITH LIGAND

19. The marketing and negotiating efforts of Raymond James were instrumental in achieving material improvements that culminated in the revised Bidding Procedures and revised Bidding Procedures Order (collectively, the "Revised Bidding Procedures"). Leveraging the Alternative Stalking Horse Proposal was a critical component in compelling Ligand to concede

key terms as part of a deal to materially improve economic terms and address the objections raised by the UCC, Reedy Creek, Mayne, and the UST.

20. Leading up to the Bidding Procedures Hearing, Raymond James engaged in extensive negotiations with Ligand, resulting in several key concessions from Ligand. These concessions included:

(i) Allocation of the Stalking Horse Purchase Agreement to $12 million for the R&D Assets and $3 million for the Commercial Assets.

(ii) Exclusion of Estate Causes of Action in EPI and D&O Insurance Proceeds from collateral and sources of recovery.

(iii) Waiver of Ligand's 3% Break Up Fee.

(iv) Assumption of the Reedy Creek Royalty Agreement, so long as there were no economic changes to the agreement.

(v) Elimination of consent and consultation rights.

(vi) Waiver of Ligand's 2% Exit Fee on the DIP.

|  | **Original Ligand Stalking Horse Proposal** | **Revised Ligand Stalking Horse Proposal** | **Creditor Recovery Impact Based on Auction Results** |
|---|---|---|---|
| Total Purchase Price | $15 million | $15 million | N/A |
| Allocation | N/A | $12 million R&D Assets / $3 million Commercial Assets | $5 million |
| Ligand Break Up Fee | $450,000 | $0 | $450,000 |
| Treatment of Reedy Creek and Ligand Royalty Agreements | No assumption of Reedy Creek Royalty Agreement

Assumption of Ligand Royalty Agreement | Assumption of both Ligand and Reedy Creek Royalty Agreements (assuming no economic changes to the Reedy Creek Royalty Agreement) | Claims removed from unsecured creditor pool |
| DIP Exit Fee | $300,000 | $0 | $300,000 |

21. The bifurcation of the R&D Assets and the Commercial Assets into separate lots created a more competitive process. It enabled bidders to bid on a portion of assets and provided for meaningful potential recovery to unsecured creditors even in the event that an incremental bid was submitted only on the Commercial Assets. The UCC endorsed the Revised Bidding Procedures as indicated in its formal declaration filed on August 14, 2023 [Docket No. 160]. The revised Ligand stalking horse proposal (the "Revised Ligand Stalking Horse Proposal") contributed to a meaningful reduction of the unsecured claims pool and meaningfully increased unsecured creditor recoveries.

22. On August 15, 2023, the Court entered an order [Docket No. 166] approving, among other things, the Revised Bidding Procedures. The improvements to the Revised Bidding Procedures modified the originally proposed procedures in a manner that I believed would secure the highest or otherwise best offer(s) for the Assets. These concessions resulted from creating the competitive tension via the Alternative Stalking Horse Proposal.

## THE AUCTION

23. On August 31, 2023, the Auction was held virtually via Zoom teleconference. The following entities were deemed the Winning Bidders and the Back-Up Bidders (as applicable) for the following Asset categories:

| Asset Category | Winning Bidder | Back-Up Bidder |
|---|---|---|
| Rhofade | Mayne Pharma LLC | Ligand Pharmaceuticals, Inc. |
| Sitavig | Ligand Pharmaceuticals, Inc. | N/A |
| R&D Assets | Ligand Pharmaceuticals, Inc. | N/A |

24. I attended the Auction. The Auction began at approximately 10:00 a.m. (NYT) on August 31, 2023, and adjourned until 1:30 p.m. (NYT) the same day for finalization of Asset

Purchase Agreements. A stenographic record was made of the Auction proceedings, and Representatives of both Qualified Bidders attended the Auction via Zoom. In addition, virtual meetings and/or conference calls with the Qualified Bidders occurred before the Auction in an effort to advance Qualified Bids and to promote the highest or otherwise best outcome for the Debtors and their estates, including the sale of Sitavig, which was not originally ascribed value on its own. I participated in a number of these breakout meetings, along with representatives of the Debtors and their other professionals.

25. The Mayne bid offered improved terms over the allocation set forth in the Revised Ligand Stalking Horse Proposal. The Mayne offer consisted of total cash consideration of $8 million, an additional allowance of up to $1.5 million for cure costs (the "Cure Cap"), and the assumption by Mayne of certain Assumed Liabilities. Compared to the initial $3 million Stalking Horse allocation from Ligand, the Mayne bid results in an incremental recovery of $5 million for unsecured creditors and reduced pool of unsecured claims by causing the assumption of the cure costs under the Cure Cap.

26. At the conclusion of the Auction, the Debtors, in consultation with their advisors and the Consultation Parties, determined that Mayne had submitted the highest or otherwise best offer for certain of the Commercial Assets related to Rhofade, and Ligand, the Stalking Horse had submitted the highest or otherwise best offer for the R&D Assets as well as certain of the Commercial Assets related to Sitavig. Each was accordingly selected as the Successful Bidder for their respective asset category or categories. In accordance with the terms of the Bidding Procedures Order and the Successful Bids, and upon entry of the Sale Order, the Successful Bids will purchase the applicable Assets and assume the applicable Assumed Liabilities.

## CONCLUSION

27.     The marketing process was effective in testing the market value of the Assets, the time period for marketing the Assets was adequate, and the outcome from the sale process yielded the highest and best value for the Assets, and the best possible outcome for the Debtors and their estates under the circumstances.

Based upon the foregoing, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of September 2023.

>  */s/ Simon Wein*
> Simon Wein
> Vice President
> Raymond James & Associates, Inc.